IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LAURA MARSHAL,

                Plaintiff,

v.                                       Case No.14-1149 -JTM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security

                Defendant.

## MEMORANDUM AND ORDER

Plaintiff Laura Marshal seeks review of a final decision by defendant, the Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). Plaintiff alleges that the Commissioner erred in determining that she can perform light work because the Administrative Law Judge's ("ALJ") residual functional capacity ("RFC") determination was not supported by a sufficient narrative. As discussed below, the decision of the Commissioner is affirmed.

### I. Background

Plaintiff protectively filed for DIB on February 24, 2011, alleging disability beginning January 11, 2011. She alleged that the illness, injuries, or conditions that limited her ability to work were: "1. Brain aneurysm 2. vertigo 3. dizzy spells 4. depression/anxiety 5. severe headaches 6. memory problems 7. can't concentrate or focus." (Dkt. 9-7, at 7). Plaintiff's claim was denied on June 9, 2011, and upon

reconsideration on February 24, 2012. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On December 3, 2012, plaintiff appeared and testified before an ALJ. In a decision dated February 8, 2013, the ALJ determined that plaintiff was not disabled under the Act.

The ALJ determined that plaintiff maintained sufficient RFC to perform light work as defined in 20 C.F.R. § 416.967 with additional nonexertional limitations that were presented to the vocational expert present at the hearing. The ALJ found that plaintiff was unable to perform any past relevant work, but found that there were jobs existing in significant numbers in the national economy that plaintiff could perform. The ALJ found that plaintiff was therefore not disabled within the meaning of the Act since February 24, 2011.

Plaintiff timely filed a request for rehearing, which was denied on March 27, 2014. The ALJ's decision therefore became the final decision of the Commissioner under 20 C.F.R. § 416.1481. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g), arguing that the ALJ's RFC determination was not supported by a sufficient narrative explanation.

## II. Legal Standard

This court reviews the ALJ's decision under 42 U.S.C. § 405(g) to "determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (citation

omitted). "Substantial evidence requires more than a scintilla but less than a preponderance." *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (citation omitted). The court's role is not to "reweigh the evidence or substitute its judgment for the Commissioner's." *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008). The possibility that two inconsistent conclusions may be drawn from the evidence does not preclude a finding that the Commissioner's decision was based on substantial evidence. *Zoltanski*, 372 F.3d at 1200.

An individual is under a disability only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley v. Astrue*, 2010 U.S. Dist. LEXIS 76220, at *3 (D. Kan. July 28, 2010) (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has prescribed a five-step sequential analysis to determine whether disability existed between the time of claimed onset and the date the claimant was last insured under the Act. *Wilson*, 602 F.3d at 1139; 20 C.F.R. § 404.1520(a)(4). If the trier of fact finds at any point during the five steps that the claimant is disabled or not disabled, the analysis stops. *Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). The first three steps require the Commissioner to assess: (1)

3

whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe or combination of severe impairments; and (3) whether the severity of those impairments meets or equals a listed impairment. *Wilson*, 602 F.3d at 1139 (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). If the impairments do not meet or equal a designated listing in step three, the Commissioner then assesses the claimant's RFC based on all medical and other evidence in the record. 20 C.F.R. § 404.1520(e). RFC is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996) (emphasis in original).  The Commissioner then proceeds to step four, where the RFC assessment is used to determine whether the claimant can perform past relevant work. *Lax*, 489 F.3d at 1084; 20 C.F.R. § 404.1520(e). The claimant bears the burden in steps one through four of proving disability that prevents performance of his past relevant work. 42 U.S.C. § 423(d)(5)(A); *Lax*, 489 F.3d at 1084.

If a claimant meets the burdens of steps one through four, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC to perform work in the national economy, given his age, education, and work experience." *Lax*, 489 F.3d at 1084 (brackets omitted).

### III. Analysis

Plaintiff argues that the ALJ's RFC determination is not supported by sufficient narrative. Specifically, she argues that (1) the ALJ arbitrarily determined plaintiff's RFC, merely summarizing her findings rather than citing evidence in support thereof, (2) provided significant weight to the State Agency opinions without explanation, (3) provided zero weight to Dr. Lee Leinwetter's opinion without explanation, and (4) provided zero weight to nurse practitioner Yong S. Cork's opinion without explanation.

**A. The RFC Is Supported By Sufficient Narrative Discussion**

Each RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts" and nonmedical evidence relied on by the ALJ. SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The narrative must address why the alleged symptom-related limitations are or are not consistent with objective medical evidence and other evidence. *Id.* The narrative should address the claimant's remaining exertional capabilities, considering each of the seven strength demands separately. *Southard v. Barnhart*, 72 F. App'x 781, 784 (10th Cir. 2003) (citing SSR 96-8p, 1996 WL 374184, at *3-4). "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

Here, the ALJ began the RFC discussion[1] by stating that plaintiff

---

[1] The ALJ's RFC discussion spans seven pages of the decision. (Dkt. 9-3, at 21-27).

has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) in that she can lift and carry 20 pounds occasionally and 10 pounds frequently. [Plaintiff] can never balance or climb ladders, ropes, and scaffolds. [Plaintiff] is unable to perform overhead reaching bilaterally and she must avoid constant, rapid handling and fingering. Furthermore, she must avoid exposure to extreme cold, excessive vibration, and unprotected heights. [Plaintiff] is able to do simple, routine, and repetitive tasks involving no independent goal setting or planning with no contact with the general public in the performance of her job duties. Additionally, the claimant can have occasional contact with coworkers.

(Dkt. 9-3, at 21). The ALJ then stated plaintiff's claimed limitations and evaluated them against the objective medical evidence in the record with extensive citation. (Dkt. 9-3, at 21-24). Specifically, the ALJ noted that: normal neurological examinations, varying recorded accounts of headache frequency, and limited changes to plaintiff's medication regimen do not support plaintiff's claimed limitations from headaches; medical imaging, plaintiff's course of treatment, and clinical signs from a number of enumerated physical examinations do not support plaintiff's claimed limitations from back pain; medical examinations and testing, improved symptoms with wrist braces, and a lack of treatment by a surgeon do not support plaintiff's claimed carpal tunnel limitations; and physical exams note normal pulmonary functioning after starting medication, indicating that plaintiff's COPD would not preclude work activity. (Dkt. 9-3, at 21-23).

The ALJ concluded that plaintiff's subjective claims are only partially credible. *Id.* The ALJ then restated the RFC determination, and verified that, "[i]n making this finding, I give significant weight to the opinions of the State agency physicians contained in Exhibits 2A and 4A." (Dkt. 9-3, at 24). The ALJ then stated that the RFC determination is consistent with the limitations opined by the State agency physicians,

with the exception of certain lifting, environmental, and manipulative limitations added by the ALJ.

The ALJ clarified that the discrepancies between the RFC determination and the State agency physicians' opinions were due to the recent developments of plaintiff's COPD and carpal tunnel syndrome, as well as plaintiff's partially credible allegations. (Dkt. 9-3, at 24). Specifically, the ALJ reduced plaintiff's lifting capacity to account for her partially credible allegations of debilitating pain; added manipulative and overhead reaching restrictions to account for plaintiff's carpal tunnel syndrome and headaches; and added that plaintiff must "avoid exposure to extreme cold, excessive vibration, and unprotected heights" to account for plaintiff's COPD and other partially credible subjective allegations. *Id.* The ALJ then clarified that the opinion of Dr. Leinwetter, which was contrary to the RFC determination, was given no weight.

The ALJ conducted a similar analysis to demonstrate that plaintiff's claimed mental limitations are unsupported by objective evidence in the record. (Dkt. 9-3, at 25-27). The ALJ noted consistent diagnoses of generalized anxiety disorder, consistent global assessment of functioning ("GAF") scores of 60 to 65, plaintiff's inconsistent compliance with prescribed treatment, unchanged medication dosage prescriptions, clinical notes of nurse practitioners Cork and Bartel, and other hospital records, all of which indicate only mild to moderate symptoms. (Dkt. 9-3, at 25-27).

The ALJ concluded that plaintiff "is limited to jobs with no contact with the general public in the performance of the job duties" and that she "can have occasional contact with coworkers," thereby addressing plaintiff's remaining capabilities. (Dkt. 9-3,

7

at 27). The ALJ clarified that "[i]n making this finding, I have given significant weight to the opinions of the State agency psychologists in Exhibits 2A and 4A" because they have training and expertise in such evaluations and their opinions are consistent with Cork and nurse practitioner Rachell Bartel's clinical notes and plaintiff's GAF scores. (Dkt. 9-4, at 11-15, 31-39). The ALJ further noted that, although Cork's medical source statement opined greater limitations than those adopted, it was given no weight because it is not an acceptable medical source and is inconsistent with other objective evidence – including Cork's own progress notes and plaintiff's subjective reports. (Dkt. 9-3, at 27).

The ALJ's narrative sufficiently demonstrates that the RFC can reasonably be accepted as consistent with the evidence in the record.

## B. The RFC Narrative is Sufficient Regarding Medical and Nonmedical Opinions

Plaintiff further alleges that the RFC is insufficient because the narrative failed to sufficiently address the opinions relied on or not relied on in determining RFC, and therefore, the RFC is not supported by substantial evidence in the record.

### 1. State Agency Physicians' Opinions

The ALJ determines RFC by evaluating a claimant's impairments that are "demonstrable by medically acceptable clinical and laboratory diagnostic techniques," then weighing evidence to determine the nature and severity of those impairments. 20 C.F.R. §§ 404.1527(a), 416.927(a). Such evidence may include medical opinions, other opinions, and a claimant's subjective complaints. *Id.*; *see also Poppa v. Astrue*, 569 F.3d

1167, 1170-71 (10th Cir. 2009). Statements from physicians are considered "medical opinions" for the RFC determination. 20 C.F.R. §§ 404.1527(a), 416.927(a).

Medical opinions are weighed by evaluating all relevant factors including: (1) the length, nature, and extent of any examining or treatment relationship; (2) whether the opinion source presents supporting evidence, such as medical signs and laboratory results; (3) how well the source explains the opinion; (4) whether the opinion is consistent with the record; (5) whether the source has a specialty related to the claimant's impairments; and (6) all other relevant factors of which the ALJ is aware that may bear on what weight should be given to a medical opinion. 20 C.F.R. §§ 404.1527, 416.927; *see Knight ex rel P.K. Colvin*, 756 F.3d 1171, 1176-77 (10th Cir. 2014). "[T]he ALJ must give good reasons in the notice of determination or decision for the weight [s]he ultimately assigns the opinion." *Knight*, 756 F.3d at 1177 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

Here, the ALJ explained that great weight was given to the State agency physicians' opinions because "[t]hese sources had the opportunity to review the majority of the medical record . . . [t]heir findings are consistent with the minimal objective evidence and nominal clinical signs and findings discussed above." (Dkt. 9-3, at 24). The ALJ addressed State agency physicians' opinions, noting discrepancies between the RFC and the opinions. As addressed above, the ALJ also addressed the medical record at length in the preceding pages. (Dkt. 9-3, at 22-24).  The ALJ also noted that consistency between plaintiff's demonstrated course of treatment and the State agency physicians' opinions was a relevant factor for giving great weight to the latter.

Thus, the ALJ's narrative sufficiently discusses why the State physicians' opinions can be reasonably accepted as consistent with the medical and other evidence.

### 2. The ALJ Adequately Addressed Dr. Leinwetter's Opinion

A treating physician's statement is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting SSR 96-2p, 1996 WL 374188, at *2). If the treating physician's statement is not well-supported or is otherwise inconsistent with substantial evidence on record, then it is not entitled to controlling weight and is weighed as any other medical opinion. *Id.* "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7.

Here, the ALJ clarified that Dr. Leinwetter's opinion was given no weight because he examined plaintiff on only one occasion and his opinion was inconsistent with that examination and other objective medical evidence. Specifically, the ALJ explained that Dr. Leinwetter's opinion that plaintiff could perform less than 2 hours of work in an 8-hour day was inconsistent with Dr. Leinwetter's examination, which noted normal neurological findings and normal lung function, and other objective evidence discussed at length in the preceding pages. (Dkt. 9-3, at 22-25). The ALJ's explanation sufficiently discusses why the limitations reported by Dr. Leinwetter cannot reasonably be accepted as consistent with the medical and other evidence.

### 3. The ALJ Adequately Addressed Nurse Practitioner Cork's Opinion

Nurse practitioners are not considered "acceptable medical sources" and their opinions are therefore not "medical source," but are "other source" opinions for determining a claimant's RFC. 20 C.F.R. § 404.1513. The factors for evaluating medical opinions can also be used to evaluate other, non-medical opinions. SSR 06-03p, 2006 WL 2329939, at *4-5 (Aug. 9, 2006). An ALJ's "explanation of the weight assigned" to an "other source" opinion must be "sufficient for [the court] to follow his reasoning." *Wells v. Colvin*, 727 F.3d 1061, 1074 (10th Cir. 2013).

The ALJ noted that Cork opined "marked and extreme limitations in nearly all areas of mental functioning." (Dkt. 9-3, at 26). The ALJ also noted that Cork's opinion was not a medical opinion, that it had been considered, and that it was given no weight because it is inconsistent with objective evidence. The ALJ noted that Cork's opinion is inconsistent with plaintiff's consistent GAF scores (Dkt. 9-3, at 25), Cork's progress notes (Dkt. 9-3, at 25-26), and plaintiff's own reports (Dkt. 9-3, at 26). Thus, the ALJ's narrative sufficiently directs the court through her reasoning as to why Cork's opinion cannot be reasonably accepted as consistent with medical and other evidence in the record.

IT IS ACCORDINGLY ORDERED this 14th day of April, 2015, that the Commissioner's decision is AFFIRMED.

s\ J. Thomas Marten
J. THOMAS MARTEN, JUDGE